1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  CITY OF STERLING HEIGHTS                No.  2:15-mc-0146 WBS AC
    GENERAL EMPLOYEES'
12  RETIREMENT SYSTEM, Individually         **Main Case: 2:12-cv-5275 MCA LDW**
    and on Behalf of All Others Similarly   **(D.N.J.)**
13  Situated,
                                            ORDER
14                      Plaintiffs,

15             v.

16  PRUDENTIAL FINANCIAL, INC., et al.,

17                      Defendants.

18

19          This is a Miscellaneous proceeding brought by movant, Commissioner David E. Jones, the

20  California Insurance Commissioner.  Commissioner Jones moves to quash the deposition

21  subpoena served upon him by plaintiffs.  The underlying litigation is pending in the U.S. District

22  Court for the District of New Jersey.  See City of Sterling Heights Gen'l Employees' Retirement

23  Sys. v. Prudential, 2:12-cv-5275 MCA LDW (D.N.J.).  This proceeding was referred to the

24  undersigned by E.D. Cal. R. 302(c)(1).

25          For the reasons that follow, the motion to quash will be granted.

26                                  I.  BACKGROUND

27          On November 11, 2015, plaintiffs served a deposition subpoena on the Commissioner.

28

                                            1

The subpoena "seeks deposition testimony from the Commissioner regarding his personal knowledge and his state of mind as to the public statements he made" about a multi-state investigation or examination into the insurance practices of defendant Prudential Financial Inc., and the subsequent settlement of that investigation.

## II.  THE POSITIONS OF THE PARTIES

The Commissioner argues that as the elected head of California's Department of Insurance, plaintiffs may not take his deposition because they have not first shown, in accordance with the "apex doctrine," that (1) he has unique first-hand, non-repetitive knowledge of the facts at issue in the underlying case, and (2) plaintiffs have exhausted other less intrusive discovery methods.  Joint Statement (ECF No. 12) at 14 (citing K.C.R. v. City of Los Angeles, 2014 WL 3434257 at *3, 2014 U.S. Dist. LEXIS 98279 at *9 (C.D. Cal. 2014) (Segal, M.J.)).  The Commissioner further argues that it would be unduly burdensome to subject him to a deposition here, where his only asserted connection to the Prudential investigation is his public statements made on behalf of the Insurance Department.

Plaintiffs argue that the Commissioner is not an "apex" deponent, and that in any event, they have met the requirements of the apex doctrine.  Plaintiffs cite the Commissioner's public statements as evidence that he has "direct, firsthand knowledge of the facts regarding the Department's investigation and settlement" regarding Prudential.  They further argue that they have exhausted their other options for obtaining the information they seek.

## III.  MEET AND CONFER ACTIVITIES

The parties have met and conferred to impasse.  Joint Statement at 8.

## IV.  ANALYSIS

A.  Standards and the Apex Doctrine

Using the ordinary standards applicable under the Federal Rules of Civil Procedure, the

2

court must quash the subpoena if Commissioner Jones shows that it would impose an "undue

burden." Fed. R. Civ. P. ("Rule") 45(d)(3)(iv); see United States v. $177,844.68 in U.S.

Currency, 2015 WL 4227948 at *4, 2015 U.S. Dist. LEXIS 90579 at *11 (D. Nev. 2015) (Foley,

M.J.) ("A party seeking to quash or modify a subpoena under Rule 45 "bears the burden of

showing why a discovery request should be denied"); see also, Rule 26(c) (protective order is

available upon a showing of "good cause," which includes a showing of "undue burden"); Rivera

v. NIBCO, Inc., 364 F.3d 1057, 1063 (9th Cir. 2004) ("The burden is upon the party seeking the

order to 'show good cause' by demonstrating harm or prejudice that will result from the

discovery"), cert. denied, 544 U.S. 905 (2005); Blankenship v. Hearst Corp., 519 F.2d 418, 429

(9th Cir. 1975) ("A strong showing is required before a party will be denied entirely the right to

take a deposition").

      Normally, a putative non-party deponent's mere assertion that he is not in possession of

relevant information would not be sufficient to avoid a deposition, since the requesting party is

entitled to test the asserted lack of knowledge. See Lexington Ins. Co. v. Sentry Select Ins. Co.,

2009 WL 4885173 at *6 (E.D. Cal. Dec. 17, 2009) (Austin, M.J.). However, "a different result is

sometimes reached when the proposed deponent is a busy government official, or a very high

corporate officer unlikely to have personal familiarity with the facts of the case." Id. That is

because the head of a government agency could have all of his or her time monopolized by

discovery in lawsuits to which they are not even parties, if they could be compelled to testify

every time the agency carried out its responsibilities.[1]  For that reason, "[v]irtually every court

---

[1] Cases have barred such "apex" depositions even when the deponent is a named
defendant, or a corporate officer of the defendant, in the underlying lawsuit.  See, e.g., K.C.R. v.
Cty. of Los Angeles, 2014 WL 3434257, 2014 U.S. Dist. LEXIS 98279 (C.D. Cal. 2014)
(denying compelled deposition of defendant Tanaka under the apex doctrine); Bicek v. C & S
Wholesale Grocers, Inc., 2013 WL 5425345, 2013 U.S. Dist. LEXIS 139897  (E.D. Cal. 2013)
(Newman, M.J.) (granting protective order and vacating deposition subpoenas for two "top-level
executives" of defendant corporation under the apex doctrine).

that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." Groupion, LLC v. Groupon, Inc., 2012 WL 359699 at *2, 2012 U.S. Dist. LEXIS 12684 at *6 (N.D. Cal. 2012) (James, M.J.) (internal quotation marks omitted); Apple Inc. v. Samsung Elecs. Co., Ltd, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (Grewal, M.J.) ("[w]hen a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), courts have observed that such discovery creates a tremendous potential for abuse or harassment") (some internal quotation marks omitted).

Accordingly, many district courts have invoked the "apex doctrine" when a party seeks to compel a high-level governmental or corporate official to testify at a deposition. Under that doctrine, the burden is shifted to the party seeking the deposition to show that it is warranted: "parties seeking to depose a high ranking corporate officer must first establish that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." Bicek v. C & S Wholesale Grocers, Inc., 2013 WL 5425345 at *4, 2013 U.S. Dist. LEXIS 139897 at *11 (E.D. Cal. 2013) (Newman, M.J.) (internal quotation marks omitted). Although the U.S. Supreme Court and the Ninth Circuit have both recognized that depositions of public agency and executive department heads are disfavored, see United States v. Morgan, 313 U.S. 409, 421-22 (1941), Kyle Eng'g Co. v. Kleppe, 600 F.2d 226, 231 (9th Cir. 1979), neither has expressly authorized shifting the burdens assigned by the Federal Rules of Civil Procedure.

B.   Resolution

As discussed below, Commissioner Jones has shown, under the ordinary rules applicable to such motions, that the requested deposition would impose an undue burden on him as

Commissioner.  Accordingly, while the concerns animating the apex doctrine weigh heavily on these proceedings, there is no need in this case to engage in (or determine the propriety of) the burden-shifting contemplated by that doctrine.  See Mansourian v. Bd. of Regents of Univ. of Cal. at Davis, 2007 WL 4557104 at *3, 2007 U.S. Dist. LEXIS 95428 at *8 (E.D. Cal. 2007) (Brennan, M.J.) (relying "on the overarching dictates of the Federal Rules of Civil Procedure in determining whether or not a protective order should issue").

>           1.   Insurance Commissioner is routinely named in litigation

The Commissioner argues that he is "routinely" named as a party in litigation relating to the Insurance Department.  Declaration of Michael Sapoznikow ("Sapoznikow Decl.") (ECF No. 3) ¶ 17.  In fact, the Insurance Commissioner – not just Commissioner Jones specifically – is named in well over 100 cases involving insurance issues.  Therefore, requiring the Insurance Commissioner to be subjected to a deposition every time a case involving a California insurer arises, would be a burden, and that burden would be undue if the Commissioner can show that there is no good reason for taking his testimony.

The burden faced by the Commissioner is well illustrated by plaintiff's reliance here on his public statements.  Specifically, plaintiffs cite Commissioner Jones's discussion, posted on the Department's website, of two other insurers, besides defendant Prudential, who have also settled with the Department.  Joint Statement at 28.  Parties litigating in the wake of those settlements would presumably want the Commissioner's testimony as much as these plaintiffs do.  In addition, the insurer conduct that led to the multi-state investigation and settlement has spawned litigation all across the country against various insurers, at least one of which makes reference to the role of the California Insurance Department in the investigation.[2]

---

    [2] See, e.g., City of Westland Police & Fire Ret. Sys. v. MetLife, Inc., ___ F. Supp. 2d ___, 2015 WL 5311196 at *3, 2015 U.S. Dist. LEXIS 121571 at *13 (S.D.N.Y. 2015) ("[a]ccording to Central States, state investigations into MetLife's accounting practices began as early as 2008,

2. <u>Commissioner Jones's knowledge</u>

Commissioner Jones asserts, through a declaration by Pam O'Connell, that he "did not manage or direct" the investigation of Prudential.  December 16, 2015 Declaration of Pam O'Connell ("O'Connel Decl.") (ECF No. 13) ¶ 12.  Instead, he "received periodic updates" from O'Connell and other attorneys.  <u>Id.</u>  O'Connell herself "was the Department's primary point of contact" for the investigation, and aside from department attorneys, "no other Department employees had a significant involvement."  <u>Id.</u> ¶ 11.  Finally, Commissioner Jones "was not directly involved in any settlement negotiations with Prudential."  <u>Id.</u> ¶ 13.

This showing meets Jones's initial burden of demonstrating that there is no good reason for taking his deposition in this case.  Plaintiffs are seeking information about the Prudential examination and settlement from a non-party who has shown that he does not have information about it.

Plaintiffs attempt to refute Jones's assertions by citing his public statements about the examination and the settlement.  However, given the O'Connell declaration, it is plain that those statements were issued on behalf of the Department, and not by the Commissioner personally.  The statements do not show that Jones had any direct, personal knowledge or involvement with the investigation.  Every cited statement is entirely consistent with a department issuing press releases in the name of the department head, and based upon information communicated to him by his staff.  Plaintiffs have offered nothing to refute the O'Connell declaration.[3]

---

when the California Insurance Commission began to look into MetLife's alleged failure to pay some life insurance benefits even after learning that an insured had died"); <u>Feingold v. John Hancock Life Ins. Co. (USA)</u>, 2013 WL 4495126 at *1, 2013 U.S. Dist. LEXIS 117070 at *3 (D. Mass. 2013) (dismissing securities class action lawsuit where it was alleged that "John Hancock regularly uses this database [the Death Master File] to determine when it may stop paying benefits but never to determine when it must start"), <u>aff'd</u>, 753 F.3d 55 (1st Cir. 2014).

[3] At oral argument, plaintiffs asserted that they have information showing that Commissioner Jones does have personal knowledge, but that they could not disclose it without violating a confidentiality agreement or protective order of some kind.  The court will not base its

Plaintiffs particularly emphasize a statement Commissioner Jones made during a news interview, regarding a specific insurance claimant who was able to obtain benefits as a direct result of the investigation and settlement.  Joint Statement at 28 (statement regarding Linda Pantarell).  However, there is nothing about that interview to indicate that Jones was personally taking credit for getting the claimant her money.  To the contrary, he talks about "what his office found," and states that "*because of his office, Linda Pantarell got $9,000 owed to her*").  Joint Statement at 28 (emphasis in text).  Nor is there any indication that he was giving the interview as a private citizen, rather than as "Insurance Commissioner Dave Jones."  Joint Statement at 28 (emphasis in text).

### 3. Authenticating Commissioner Jones's statements

At oral argument on this matter, plaintiffs argued that they wanted to be able to introduce Commissioner Jones's public statements into evidence at trial, and that the statements would be inadmissible without deposition testimony providing the basis for the statements.  However, plaintiffs did not explain why the desired deposition testimony would overcome a hearsay objection.  Viewed in light of the O'Connell declaration, those statements were plainly based upon what the Commissioner had been told by his attorneys and staff.

### 4. Relevance

Plaintiffs state that they want to establish Jones's "state of mind as to the public statements he made."  Joint Statement at 30.  Further, they state that no one else can substitute for Jones to tell them "what Commissioner Jones meant in his public statements regarding the investigation into and settlement of Prudential's unclaimed property practices or why Commissioner Jones released those statements when he did."  Joint Statement at 41.

However, plaintiffs have not explained how Jones's state of mind has any relevance to

ruling upon information that is not placed before it in some way.  See, e.g., E.D. Cal. R. 141 (procedure for sealing documents).

their underlying securities lawsuit, nor why the timing of the statements matters to their securities

lawsuit, or what it is about Jones's statements that they need clarified.  Without some showing

that a deposition of Jones is likely to lead to some admissible evidence, the deposition of this non-

party is an undue burden.

V.  CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that

1.  Commissioner Jones's Motion To Quash (ECF No. 1) is GRANTED; and

2.  The Clerk of the Court shall close this case.

DATED: December 24, 2015

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE